**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 09-cv-1463-AP

CENTER FOR NATIVE ECOSYSTEMS,
BIODIVERSITY CONSERVATION ALLIANCE,
CENTER FOR BIOLOGICAL DIVERSITY,
DEFENDERS OF WILDLIFE, and
NATURAL RESOURCES DEFENSE COUNCIL,

Petitioners,

v.

KEN SALAZAR, Secretary of the U.S. Department of the Interior, and
SAM D. HAMILTON, Director of the U.S. Fish and Wildlife Service,[1]

Respondents,

and

WYOMING FARM BUREAU FEDERATION, and
WYOMING STOCK GROWERS ASSOCIATION,

Intervenors,

STATE OF WYOMING,

Intervenors.

---

**OPPOSITION TO PETITIONERS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD (DOC. 32)**

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), Sam D. Hamilton, Director, U.S. Fish and Wildlife Service, successor to Rowan Gould, is automatically substituted as a party.

Ken Salazar, in his official capacity as Secretary of the Interior, and Sam D. Hamilton, Director of the U.S. Fish and Wildlife Service (collectively, the "Service"), oppose Petitioners' Motion to Supplement the Administrative Record (Doc. 32) ("Pet. Mem."). Petitioners' petition for review challenges the Service's decision that the Preble's Meadow Jumping Mouse ("Preble's") is not threatened throughout all of its range but should retain its threatened status in a significant portion of its range in Colorado. 73 Fed. Reg. 39,790 (July 10, 2008) ("Final Rule"). Petitioners seek to supplement the administrative record with consultation documents involving the Preble's in Wyoming and with documents relating to the Department of the Interior Solicitor's March 16, 2007 "M-Opinion" on the meaning of the phrase "significant portion of its range." See Exhibit 1 (M-Opinion).

As explained further below, the Motion to Supplement should be denied. Service decisionmakers did not possess or consider, directly or indirectly, the consultation documents that Petitioners seek to add to the record in the context of promulgating the Final Rule. Likewise, with respect to the Solicitor's M-Opinion, Petitioners have petitioned for review of the Final Rule only, not the M-Opinion. In issuing the Final Rule, the Service considered the M-Opinion itself and not any of the documents relating to the development of the M-Opinion; therefore, the Service properly included only the M-Opinion in the administrative record for the Final Rule. The Administrative Record is complete, and Petitioners' efforts to create a new record on which to review the Final Rule are contrary to law and should be rejected.

## BACKGROUND

### I. THE ENDANGERED SPECIES ACT ("ESA")

Enacted in 1973, the ESA is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." Tennessee Valley Auth. v. Hill, 437 U.S. 153, 180 (1978). The ESA delegates authority to list most terrestrial species as endangered or threatened to the Secretary of the Department of the Interior ("DOI"). 16 U.S.C. §§ 1532(15),

1533. The Secretary, in turn, administers his responsibilities through the Service. See 50 C.F.R. § 402.01(b).

The ESA directs the Secretary to publish lists of endangered and threatened species in the Federal Register and to "specify with respect to each such species over what portion of its range it is endangered or threatened." 16 U.S.C. § 1533(c)(1). The ESA defines "species" as including "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id*. § 1532(16). A species is endangered if it is "in danger of extinction throughout all or a significant portion of its range." *Id*. § 1532(6). A species is threatened if it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id*. § 1532(20).

The Service bases its listing decisions on five statutorily prescribed factors, any one of which may support a listing determination:

> (A) the present or threatened destruction, modification, or curtailment of its habitat or range;
> (B) overutilization for commercial, recreational, scientific, or educational purposes;
> (C) disease or predation;
> (D) the inadequacy of existing regulatory mechanisms; or
> (E) other natural or manmade factors affecting its continued existence.

*Id*. § 1533(a)(1). The Service must base its listing determinations "solely on the basis of the best scientific and commercial data available," after conducting a status review of the species and taking into account efforts by any state or foreign nation to protect the species. *Id*. § 1533(b)(1)(A). Once a species is listed, various ESA provisions apply, such as the prohibition on the unauthorized "take"[2] of the species and the requirement that federal agencies ensure that their actions are not likely to jeopardize the species or destroy or adversely modify critical habitat. 16 U.S.C. §§ 1536, 1538.

The Service defines "recovery" to mean "improvement in the status of listed species to the point at which listing is no longer appropriate under the criteria set out in [ESA] section

[2] The ESA defines "take" to include "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect" or to attempt to engage in such conduct. 16 U.S.C. § 1532(19).

4(a)(1)." 50 C.F.R. § 402.02; 16 U.S.C. § 1532(3). The ESA instructs the Service to monitor the status of listed species and "from time to time revise each list . . . to reflect recent determinations, designations, and revisions made in accordance with" the listing provisions of ESA § 4. 16 U.S.C. § 1533(c)(1). The same five factors that determine whether a species is endangered or threatened also determine whether threats to a species have been diminished or removed to the point that reclassification or delisting is appropriate. See id. § 1533(c)(2); see also 50 C.F.R. § 424.11(d).

## II. THE ADMINISTRATIVE PROCESSES FOR THE PREBLE'S

The Preble's meadow jumping mouse (*Zapus hudsonius preblei*), a relatively small rodent with an extremely long tail, large hind feet and long hind legs, inhabits the foothills in southeastern Wyoming, southward along the eastern edge of the Front Range of Colorado to Colorado Springs. See 68 Fed. Reg. 37,276, 37,277 (June 23, 2003). The Preble's mouse was listed as a threatened species throughout its range under the ESA in 1998, 63 Fed. Reg. 26,517 (May 13, 1998), and the Service designated critical habitat for the Preble's in 2003, 68 Fed. Reg. 37,276.

On July 27, 1999, the Service received a petition to remove the Preble's from the ESA's list of threatened and endangered species. 68 Fed. Reg. 70,523, 70,524 (Dec. 18, 2003). The Service thereafter received two other petitions to remove the Preble's from the list. Pursuant to 16 U.S.C. § 1533(b)(3)(A), the Service examined the petitions to determine whether they presented "substantial scientific or commercial information indicating that the petitioned action may be warranted." On December 18, 2003, the Service concluded that the petitions did not present substantial scientific or commercial information indicating that delisting may be warranted and declined to proceed with a further status review of the species. 68 Fed. Reg. at 70,523.

On December 17, 2003, Coloradans for Water Conservation and Development and the State of Wyoming filed separate petitions to delist the Preble's, again triggering the ESA's

administrative process for review of petitions. See 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14 (delisting process triggered by the filing of a petition to delist or on the Secretary's own initiative). 69 Fed. Reg. 16,944, 16,945 (Mar. 31, 2004). As with the previous delisting petitions, the Service evaluated the petitions pursuant to 16 U.S.C. § 1533(b)(3)(A). After examining the petitions, the Service concluded that the petitions presented substantial information to indicate that delisting of the Preble's may be warranted. Id. The Service thus commenced a status review of the Preble's to determine whether, under 16 U.S.C. § 1533(b)(3)(B), the delisting of the species was or was not warranted. Id.

On February 2, 2005, the Service issued a 12-month finding on the December 2003 petitions to delist the Preble's, this time finding that delisting the Preble's was warranted. See 70 Fed. Reg. 5,404 (Feb. 2, 2005). Accordingly, pursuant to 16 U.S.C. § 1533(b)(3)(B)(ii), the Service issued a proposed rule to remove the mouse from the ESA's list of threatened and endangered species. Id. Due to the complexity of the issues involved, and the release of a United States Geological Survey genetic analysis of several meadow jumping mouse subspecies that "substantially disagrees with the determination contained in the proposed rule that Preble's is not a distinct subspecies," the Service extended the time to take final agency action on the proposed delisting rule by six months pursuant to 16 U.S.C. § 1533(b)(6)(B)(i). 71 Fed. Reg. 8,556 (Feb. 17, 2006).

As part of the extension, the Service reopened the comment period on the proposed delisting rule for a period of 60 days to solicit comments on the competing scientific data. Id. Furthermore, in light of the inconsistencies between several scientific studies, the Service contracted with the Sustainable Ecosystems Institute ("SEI") to organize an independent scientific review panel to analyze, assess, and weigh the findings of the several, often conflicting studies of the Preble's mouse. Following the meeting of an expert panel, SEI delivered to the Service an evaluation of the scientific information regarding the Preble's mouse on July 21,

2006. See AR G 1-1 at 010456. Subsequently, the State of Wyoming sued the Service for failing to publish a final delisting determination. Id. The parties reached a settlement whereby the Service agreed either to withdraw its 2005 proposed rule to delist or publish a new proposed rule considering the Preble's taxonomy and the subspecies' threatened status in light of the current data on distribution, abundance, and trends. Id.

During the administrative process, the Solicitor of the United States Department of the Interior ("Solicitor") issued a legal opinion on March 16, 2007, entitled: "the Meaning of 'In Danger of Extinction Throughout All or a Significant Portion of its Range.'" See Exhibit 1 (Solicitor's Opinion, M-37013). The M-Opinion set forth the Solicitor's interpretation of the meaning of the statutory phrase "in danger of extinction throughout all or a significant portion of [a species'] range" located in the definitions of "endangered species" and "threatened species." Id. at 1; see also 16 U.S.C. § 1532(6), (20). On November 7, 2007, the Service published a revised proposed rule to amend the listing of the Preble's to specify over what portion of its range the subspecies is threatened. 72 Fed. Reg. 62,992 (Nov. 7, 2007). In the proposed Rule, the Service solicited comments on the M-Opinion and its application to the Preble's, and the Service made the M-Opinion available publically. See 72 Fed. Reg. at 62,992 (seeking comments on the Service's "analysis and conclusions regarding 'significant portion of its range' in light of the March 14, 2007, Department of the Interior, Solicitor Memorandum opinion available at http://www.doi.gov/solicitor/M37013.pdf.").

On June 30, 2008, the Service submitted for publication the Final Rule challenged here, amending the listing for the Preble's. 73 Fed. Reg. 39,790. The Service determined that the Preble's is a valid subspecies and should not be delisted based upon taxonomic revision. Id. The Service also adopted the legal interpretation set forth in the M-Opinion and applied that interpretation, concluding that the Preble's subspecies is not threatened throughout all of its range, and the portion of the subspecies' current range located in Colorado represents a

significant portion of the current range where the subspecies should retain its threatened status. Id. By relying on and adopting the M-Opinion in rulemaking promulgated after notice and comment, the agency's statutory interpretation and application of that interpretation in the Final Rule is the final agency action subject to judicial review. See, e.g., Rocky Mountain Oil and Gas Ass'n v. Watt, 696 F.2d 734, 741 (10th Cir. 1982) ("Interior's adoption of the Solicitor's interpretation" of the statute, and its reliance on the interpretation in guidance promulgated after notice and comment, "constitute[s] final agency action for the purposes of this appeal").

## STANDARD OF REVIEW

### I. A NARROW REVIEW STANDARD GOVERNS THIS CASE.

Petitioners' attempt to supplement the record must be considered in light of the Court's role in reviewing agency action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. See Wyoming Farm Bureau Fed'n v. Babbitt, 199 F.3d 1224, 1231 (10th Cir. 2000) (judicial review of ESA claims governed by the APA). Section 706 of the APA authorizes courts to set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(A). Under this standard, a court's inquiry must be thorough, and the Court's duty is "to ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made." Cliffs Synfuel Corp. v. Norton, 291 F.3d 1250, 1257 (10th Cir. 2002) (citation omitted); Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 378 (1989).

Like an appellate court reviewing a district court's decision, "[i]t is not [the court's] duty, [] to substitute [its] judgment for that of the agency's on matters within its expertise." Colorado Wild, Heartwood v. U.S. Forest Serv., 435 F.3d 1204, 1213-14 (10th Cir. 2006) (citing Marsh, 490 U.S. at 378). Nor is it a court's role to weigh conflicting evidence or evaluate credibility, see Pennaco Energy, Inc. v. United States Dep't of Interior, 377 F.3d 1147, 1159 (10th Cir. 2004), or otherwise decide the propriety of competing methodologies, see Silverton Snowmobile

Club v. U.S. Forest Serv., 433 F.3d 772, 782 (10th Cir. 2006). Accordingly, the applicable APA standard of review is narrow and highly deferential to the agency. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 415-16 (1971); Valley Cmty. Pres. Comm'n v. Mineta, 373 F.3d 1078, 1084 (10th Cir. 2004) (APA review is "highly deferential"). The deference given to an agency is especially strong where, as here, "the challenged decisions involve technical or scientific matters within the agency's area of expertise." Utah Envt'l Congress v. Bosworth, 443 F.3d 732, 739 (10th Cir. 2006) (citation omitted); Utah Shared Access Alliance v. U.S. Forest Serv., 288 F.3d 1205, 1213 (10th Cir. 2002).

## II. THE AGENCY IS JUDGED BY THE RECORD BEFORE THE AGENCY AT THE TIME OF THE DECISION IN QUESTION.

In reviewing agency action under the deferential APA review provisions, Congress expressly directed that the reviewing court "shall review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. The Supreme Court has held that "in cases where Congress has simply provided for review [under the APA], . . . [judicial] consideration is to be confined to the administrative record and . . . no de novo proceedings may be held." United States v. Carlo Bianchi & Co., 373 U.S. 709, 715 (1963) (citations omitted). As such, the Tenth Circuit has affirmed that courts reviewing agency action under the APA are to act as an appellate court and not as a finder of fact. See Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1573 (10th Cir. 1994) (holding that, consistent with the APA, the reviewing court does not substitute its judgment on the facts for that of the agency).

Thus, although there may be issues of fact before the administrative agency, the function of the district court is to determine whether or not, as a matter of law, the evidence in the administrative record permitted the agency to make the decision it did. Camp v. Pitts, 411 U.S. 138, 142 (1973) ("the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."); Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743 (1985); Olenhouse, 42 F.3d at 1576 (the court conducts a

"plenary review of the record as it existed before the agency" (citation omitted)); Lewis v. Babbitt, 998 F.2d 880, 882 (10th Cir. 1993) ("Judicial review . . . is generally based on the administrative record that was before the agency at the time of its decision . . . "). Accordingly, review of agency decisions, such as the decision here, is limited to the administrative record. Bar MK Ranches v. Yuetter, 994 F.2d 735, 739 (10th Cir. 1993) (citing Overton Park, 401 U.S. at 420).

"The complete administrative record consists of all documents and materials directly or indirectly considered by the agency." Bar MK Ranches, 994 F.2d at 739. The Supreme Court has held that the agency determines what constitutes the record and that courts are to base their review on that record. "The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the court." Florida Power, 470 U.S. at 743-44 (citations omitted). Only the agency is in a position to know what materials were considered in making its decision:

> [t]he question left for the court is straightforward: who determines what constitutes the "full" administrative record that was "before" the agency? Common sense and precedent dictate that at the outset, the answer must be the agency. It is the agency that did the "considering," and that therefore is in a position to indicate initially which of the materials were "before" it--namely, were "directly or indirectly considered." If it were otherwise, non-agency parties would be free to define the administrative record based on the materials they believe the agency must (or should) have considered, leaving to the court the unenviable task of sorting through a tangle of competing "records" in an attempt to divine which materials were considered. Judges are not historians charged with isolating the "true" basis for an agency's decision when its ostensible justification proves unconvincing. Hence the presumption that the agency properly designated the administrative record.

Fund for Animals v. Williams, 245 F. Supp. 2d 49, 56-57 (D. D.C. 2003), aff'd, 428 F.3d 1059 (D.C. Cir. 2005) (internal citations and quotations omitted).

An agency is not "obligated to include every potentially relevant document existing within its agency. Only those documents that were directly or indirectly considered by the [agency's] decisionmaker(s) should be included in the administrative record." Pacific Shores Subdivision v. U.S. Army Corps of Eng'rs, 448 F. Supp. 2d 1, 7 (D. D.C. 2006); Linemaster

Switch Corp. v. EPA, 938 F.2d 1299, 1305-06 (D.C. Cir. 1991) (rejecting argument that data was "before the agency" for purposes of the administrative record simply because the data was in the agency's files; any other holding would "effectively require [the agency] to comb" all of its files for "potentially relevant data" before it could take action).

The agency's designation of an administrative record is also entitled to a presumption of regularity: "[T]he designation of the Administrative Record, like any administrative procedure, is entitled to a presumption of administrative regularity. The court assumes the agency properly designated the Administrative Record absent *clear evidence* to the contrary." Bar MK Ranches, 994 F.2d at 740 (citations omitted; emphasis added);[3] see also Pacific Shores, 448 F. Supp. 2d at 6 (a plaintiff "must identify reasonable, non-speculative grounds for its belief that the documents [it seeks to add to the record] were considered by the agency and not included in the record."). When, as here, a federal agency certifies an administrative record, a party seeking to challenge the content of that record bears a heavy burden to demonstrate that the administrative record is not complete.

## ARGUMENT

### I. THE CONSULTATION DOCUMENTS PETITIONERS SEEK TO ADD TO THE RECORD WERE NOT CONSIDERED BY THE DECISIONMAKERS AND ARE NOT PART OF THE RECORD FOR THE FINAL RULE.

Petitioners baldly assert that "all of the core consultation documents pertaining to projects in Preble's habitat in Wyoming . . . were unquestionably 'before the agency' when it made the 2008 delisting decision" and thus the Service should be ordered to add these documents to the

[3] Petitioners have not attempted to establish any of the narrow conditions that allow a reviewing court to go beyond the administrative record. See Franklin Sav. Ass'n v. Director, Office of Thrift Supervision, 934 F.2d 1127, 1137-38 (10th Cir. 1991) (listing three limited purposes for which a reviewing court may go outside of the administrative record). Accordingly, Federal Respondents address only the "clear evidence" standard that applies to a challenge that an administrative record is not complete. Whichever standard applies, however, Petitioners have not and cannot meet their burden to demonstrate that the record should be supplemented with the documents they seek to add to the record.

record. Pet. Mem. at 12. Petitioners have failed entirely to meet their burden to demonstrate by clear evidence that the consultation documents they seek to add to the record were directly or indirectly considered by Service decisionmakers in promulgating the Final Rule. Therefore, the Court should deny Petitioners' request to add these consultation documents to the record.

Petitioners first argue that, because the Service referred in the Final Rule to ESA consultations for projects involving the Preble's in Wyoming, Service decisionmakers necessarily directly or indirectly considered the consultation documents themselves, i.e., the Biological Opinions prepared by the Service for each consultation, and the biological assessments prepared by the Federal "action agency." Pet. Mem. at 11-12. Petitioners are both factually and legally incorrect.

As a factual matter, Petitioners mischaracterize the reference in the Final Rule to the consultations and misunderstand who the Service decisionmakers were in this case. The Service's Colorado Field Office was responsible for making the listing determination at issue here. Declaration of Susan Linner ("Linner Decl.") ¶¶ 1, 3, 5. That office requested summary information from the Service's Wyoming Field Office on consultations in Wyoming between 1998 and 2008 as relevant to preparation of the Final Rule. Id. ¶ 6. Thus, the reference in the Final Rule is to summary information -- such as the number of consultations that occurred in Wyoming and total acreages -- and does not discuss the substance of those consultations. See AR F 4-149 (table summarizing Wyoming § 7 consultations to 2005 and emails re: two additional consultations); AR G 5-29 (informal intra-Service consultation); AR G 6-52 (email re: "updating" consultation information). In addition to the summary information, the Wyoming Field Office provided the Colorado office with two Biological Opinions in their entirety. Linner Decl. ¶ 6. The Service has agreed to correct the record to include these two Biological Opinions, as well as the e-mail communications between the Colorado and Wyoming offices, all of which were inadvertently omitted from the Administrative Record. Id. In sum, the Service

decisionmakers in this case – the Secretary and, indirectly, Service personnel from the Colorado Field Office that worked on the Final Rule – did not consider any consultation documents but the two biological opinions, as they did not even possess those consultation documents and utilized summary information about the number of consultations only. See id. ¶ 5.

As a legal matter, Petitioners have not even attempted to meet their heavy burden to demonstrate that the Service decisionmakers in this case did consider these documents. Petitioners must do more than simply assert that non-decisionmaking personnel in the Wyoming Field Office possessed these consultation documents or that references to summary information on the number of consultations completed in Wyoming in the Final Rule equates to "directly or indirectly considering" the underlying consultation documents such that they must be included in the record. See Pacific Shores, 448 F. Supp. 2d at 7 ("Beyond their description and the date of the proffered exhibits, [the plaintiff] should also describe when the documents were presented to the agency, to whom, and under what context."); Defenders of Wildlife v. Dalton, 24 C.I.T. 1116, 1123-24 (CIT 2000) (plaintiffs must provide clear evidence that agency personnel in possession of certain documents were the relevant decisionmakers). Thus, in contrast to the situation in Wilderness Soc'y v. Wisely, 524 F. Supp. 2d 1285, 1295 (D. Colo. 2007), upon which Petitioners rely, these consultation documents were not even before the agency because they were not in the possession of the relevant decisionmakers.[4] Petitioners' motion must be denied due to Petitioners' failure to provide any evidence to demonstrate that the relevant decisionmakers considered the consultation documents they seek to add to the record; indeed, the Declaration submitted herein conclusively rebuts such a claim.

[4] Petitioners' reliance on Ark Initiative v. U.S. Forest Serv., No. 06-cv-02418-PSF-MJW, 2007 WL 1757021 (D. Colo. June 18, 2007), is also misplaced. Pet. Mem. at 10. The court in that case simply stated in summary fashion that "Plaintiffs have met their burden of proof and have overcome the presumption of regularity that the administrative record in this case is complete." 2007 WL 1757021, at *1. There is no indication in the opinion of how the plaintiffs in that case "met their burden of proof." Regardless, in this case, Petitioners have not provided any evidence to meet their burden of proof. So Ark Initiative actually supports a denial of Petitioners' motion.

Nor does Petitioners' contention that the Administrative Record must contain every scrap of paper available to the Service or DOI have legal merit. The administrative record is not required to, nor intended to, contain every communication or scrap of paper in the agency's files related to a particular topic. TOMAC v. Norton, 193 F. Supp. 2d 182, 195 (D. D.C. 2002) ("[P]laintiff's argument that working edits should have been included in the administrative record appears to confuse the administrative record – the record the agency relied upon in its final action – with FOIA's emphasis on every scrap of paper that could or might have been created.") (citation omitted); Pacific Shores, 448 F. Supp. 2d at 5 (holding that an agency's administrative record "is not obligated to include every potentially relevant document existing within its agency"). While the agency must include the documents before the agency decisionmaker at the time of the decision, "interpreting the word 'before' so broadly as to encompass any potentially relevant document existing within the agency or in the hands of a third party would render judicial review meaningless." Fund for Animals, 245 F. Supp. 2d at 57 n.7 (D.D.C. 2003); see Linemaster Switch, 938 F.2d at 1306 (finding that data submitted to an agency in connection with an unrelated agency action was not part of the administrative record for the agency decision at issue). Thus, case law does not support Petitioners' assertion that additional agency documents should be part of the record simply because they were "before" some portion of the Service or DOI.

Petitioners next argue that, notwithstanding whether the Service considered these consultation documents, the Court should require the Service to include these documents in the record because they are "important to judicial review of the basis for, and the implications of, the Service's delisting decision." Pet. Mem. at 12. In support of this argument, Petitioners cite only to one case from the D.C. Circuit that is entirely distinguishable. Id. at 13 (citing Kent County, Delaware Levy Court v. EPA, 963 F.2d 391 (D.C. Cir. 1992) ("Kent")). In Kent, the D.C. Circuit permitted supplementation of the administrative record with documents in one of the regional

offices of EPA that "relate[d] to the position of the agency's own experts on the question central to the case." 963 F.2d at 396. The Court found that EPA was "at least negligent in failing to discover" the documents because it had looked outside its national files, it had relied on a single memorandum from another program, and the agency's policy on the issue varied from region to region. Id.

In this case, in contrast, the Service was not negligent in identifying pertinent information – the Service expressly considered consultation documents and summary information on ESA consultations in Wyoming. Contrary to Petitioners' claims, the issue is not whether the Service was negligent in failing to discover pertinent information, but rather whether the Service's decision to consider the information it did (versus the category of documents Petitioners seek to include in the record) was arbitrary and capricious. On this issue, Petitioners simply assert that selected excerpts from their chosen consultation document are important because they discuss the status of and impacts to the Preble's in portions of its range, including Wyoming. Pet. Mem. at 12-13 & n. 4. The Service, however, extensively analyzed and examined the status of and threats to the Preble's in Wyoming in the Final Rule. See 73 Fed. Reg. 39,740, 39,816-39,834 (July 10, 2008). Thus, the Final Rule belies Petitioners' notion that the consultation documents are somehow "important" to assessing the status of and threats to the Preble's in Wyoming, as the rule and the record are not silent on this issue.

In short, the issue on review is whether the Service's analysis and decisions regarding the status of and impacts to the Preble's are rational and supported by the evidence in the record and not, as Petitioners would have it, whether the Service's decision can be sustained on a new record developed in the first instance in this Court. See Olenhouse, 42 F.3d at 1576 (the court conducts a "plenary review of the record as it existed before the agency" (emphasis added)); see also Lodge Tower Condo. Ass'n v. Lodge Props., Inc., 880 F. Supp. 1370, 1374 (D. Colo. 1995) (district court does not sit as a finder of fact because agency action is "reviewed, not tried,"

rather, "the issue is not whether the material facts are disputed, but whether the agency properly dealt with the facts"), aff'd, 85 F.3d 476 (10th Cir. 1996). Petitioners do not provide *any* evidence to support their allegation that the administrative record is incomplete or inadequate. Thus Petitioners' motion falls far short of meeting the "clear evidence" standard set forth in Bar MK Ranches, and the presumption that Federal Respondents properly have designated the administrative record for this case must stand.

## II. DOCUMENTS PREPARED IN CONNECTION WITH THE SOLICITOR'S M-OPINION ARE NOT PROPERLY PART OF THE RECORD.

Petitioners' request to add documents prepared in connection with the Solicitor's M-Opinion to the Administrative Record also is meritless. Petitioners' only argument as to why such documents must be included is because Petitioners purportedly raise an independent challenge to the M-Opinion. See Pet. Mem. at 14. In support of this argument, Petitioners cite to paragraphs 12-13 and 19-20 of their Petition. Id. The Petition for Review does not substantiate these claims, as nowhere in those paragraphs, or any other paragraph of the Petition, do Petitioners substantively challenge the M-Opinion itself. To the contrary, the Petition for Review (functionally equivalent to a notice of appeal) unambiguously identifies the Final Rule as the agency action Petitioners seek to have reviewed by this Court. Petition for Review, Doc. 1 at ¶ 1 ("This case challenges the decision of the U.S. Department of the Interior ("DOI") and the U.S. Fish and Wildlife Service ("FWS") to remove the Preble's meadow jumping mouse, *Zapus hudsonius preblei*, from the list of threatened and endangered species in the state of Wyoming … and to list it as threatened, instead of endangered, in the state of Colorado. See Final Rule to Amend the Listing for the Preble's Meadow Jumping Mouse, 73 Fed. Reg. 39,790 (July 10, 2008)").[5]

---

[5] The petition for Review does raise a procedural claim that the Service erred in failing to subject the M-Opinion to notice and comment pursuant to 16 U.S.C. § 1533(h) prior to its issuance by the Solicitor's Office. See, e.g., Petition ¶¶ 54-55. This is a purely legal claim (i.e., whether the ESA procedurally requires Solicitor's opinions to be published in the Federal Register for notice and comment). Thus, production of documents underlying the M-Opinion are

Thus, there is no indication from the Petition for Review that Petitioners seek to independently challenge the M-Opinion, apart from the Service's reliance on the opinion in the Preble's Rule. This makes sense, as the final agency action and statutory interpretation at issue here is contained in the Final Rule and not in the M-Opinion. See Rocky Mountain Oil and Gas Ass'n v. Watt, 696 F.2d 734, 741 (10th Cir. 1982) ("Interior's adoption of the Solicitor's interpretation" of the statute, and its reliance on the interpretation in guidance promulgated after notice and comment, "constitute[s] final agency action for the purposes of this appeal"). Indeed, courts have dismissed facial challenges to Solicitor's opinions precisely because they are, as their title indicates, opinions. See Glamis Imperial Corp. v. Babbitt, slip opinion, 00-cv-1934-W (S.D. Cal. Oct. 31, 2000) (Doc. 30), attached hereto as Exhibit 2 (dismissing for lack of jurisdiction a facial challenge to a Solicitor's opinion). As such, Petitioners have not raised an independent challenge to the Solicitor's opinion, nor could they properly do so.

For these reasons, Petitioners' contention that materials underlying the M-Opinion must be produced because they independently challenge the M-Opinion does not have merit. Nor can Petitioners belatedly alter their Petition for Review to challenge additional actions simply to justify the production of additional documents by the agency. See Fed. R. App. P. 3(c)(1)(B) (requiring petition for review or notice of appeal to "designate the judgment, order, or part thereof being appealed"); Nolan v. U.S. Dep't of Justice, 973 F.2d 843, 846 (10th Cir. 1992) (while liberally construed, "[t]he dictates of Rule 3 are jurisdictional. Each requirement in Rule 3 must be satisfied as a prerequisite to appellate review." (citation omitted)); Olenhouse, 42 F.3d at 1580 ("Reviews of agency action in the district courts must be processed *as appeals*."). Petitioners here seek review of the Final Rule, and the Service compiled a record for the Final Rule, as required by law. In compiling that record, the Service included the M-Opinion in the

---

not pertinent to the resolution of this claim, to the extent the Court even has jurisdiction to reach this claim (a matter to be addressed in dispositive briefing).

record, as it relied on and adopted the M-Opinion, not the underlying documents related to the M-Opinion. Linner Decl. ¶ 7. Thus, the Service appropriately did not include other materials relating to that Opinion, and Petitioners have failed to adduce any evidence, much less clear evidence, to show otherwise.

Petitioners' reliance on Northwest Envtl. Advocates v. EPA, CV05-1876-HA, 2008 WL 111054 (D. Or. Jan. 7, 2008) ("NWEA"), to argue the contrary is misplaced. Pet. Memo. at 15. In NWEA, the plaintiff challenged EPA's approval of certain of the State of Oregon's water quality standards, including a water quality standard for temperature, and the Service's and the National Marine Fisheries Service's biological opinions on those approval actions. Of relevance here, the plaintiff filed a motion to complete the administrative records seeking to add to the record all documents underlying a regional guidance document on temperature ("Temperature Guidance") that EPA designed to expedite review of water quality standards submitted by a particular state or tribe by consolidating in that document the scientific information regarding temperature and its effects on salmonid species in the Northwest. The court in NWEA ordered the Federal defendants to add to their records all documents underlying the Temperature Guidance, reasoning that the Temperature Guidance "is the agency decision for all practical purpose" given its specific, scientific nature. NWEA, 2008 WL 111054, at *3.

The M-Opinion, in contrast to the Temperature Guidance in NWEA, is not a scientific document and was not developed by the Service to expedite review of decisions akin to specific water quality standards. Instead, the M-Opinion is just that -- the legal opinion of the Department of the Interior's attorneys on the meaning of statutory language. While the Service chose to adopt the interpretation of "significant portion of the range" set forth in the M-Opinion, the documents underlying the Opinion are not integral to the challenged decision in the same way that those underlying the Temperature Guidance were in the NWEA case. Rather, it is the legal interpretation and opinions in the M-Opinion itself that were considered and relied upon by

the Service in promulgating the Preble's rule, not the documents that may have been considered in issuing the opinion. Thus, to the extent this Court may be inclined to rely on this unpublished, out-of-Circuit decision, the case does not support Petitioners' argument.

## CONCLUSION

Petitioners seek little more than to create a new record in which to review the Service's Final Rule. In and of itself, Petitioners' request is telling, as they evidently find it necessary to depart from the record in order to mount a challenge to the Service's reasoned decision-making set forth in the Final Rule. But, however beneficial Petitioners may find it, creating a new record to review the Service's decision does not conform to the APA or to applicable law - the Service's decision must stand or fall on the reasons it articulated, and the basis for its decisions, as set forth in the Final Rule and in the Administrative Record. Accordingly, Respondents respectfully request that the Court deny Petitioners' motion to require the production of additional documents that are not properly part of the Administrative Record.

To the extent the Court concludes that Petitioners have raised a claim independently challenging the Solicitor's M-Opinion, therefore warranting the production of documents underlying the M-Opinion, Respondents respectfully request an opportunity to file a motion to dismiss for lack of jurisdiction before being ordered to produce the documents. See, e.g., Glamis Imperial Corp., slip opinion, attached hereto as Exhibit 2 (dismissing for lack of jurisdiction a challenge to a Solicitor's opinion). Should the Court nonetheless order the production of the documents underlying the M-Opinion, Respondents respectfully request that the Service be given sufficient opportunity to locate the documents, conduct a privilege review, and assert any privileges that may be applicable, as many of the documents underlying the M-Opinion are likely to be privileged and protected against disclosure under applicable law.

Respectfully submitted this 7th day of January, 2010.

IGNACIA S. MORENO, Assistant Attorney General

JEAN E. WILLIAMS, Chief
KRISTEN L. GUSTAFSON, Assistant Chief

*/s/ Michael R. Eitel*
MICHAEL R. EITEL, Trial Attorney (Neb. Bar No. 22889)
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
1961 Stout Street, 8th Floor, Room 812
Denver, Colorado 80294
Tel: 303-844-1479 / Fax: 303-844-1350
Email: Michael.Eitel@usdoj.gov

OF COUNSEL
S. Amanda Koehler
Office of the Solicitor
Denver, CO

*Attorneys for Respondents*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on January 7, 2010, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing to the following counsel:

Michael Ray Harris
mharris@law.du.edu

Ronald Walter Opsahl
ropsahl@mountainstateslegal.com, stoeser@mountainstateslegal.com

Eric R. Glitzenstein
eglitzenstein@meyerglitz.com

Jason C. Rylander
jrylander@defenders.org, jasonrylander@gmail.com

Affie B. Ellis
aellis@state.wy.us, hhunte@state.wy.us

By: *Michael R. Eitel*
Trial Attorney (Neb. Bar No. 22889)
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
1961 Stout Street, 8th Floor, Room 812
Denver, Colorado 80294
Tel: 303-844-1479 / Fax: 303-844-1350
Email: Michael.Eitel@usdoj.gov