## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-1463-AP

CENTER FOR NATIVE ECOSYSTEMS
BIODIVERSITY CONSERVATION ALLIANCE
CENTER FOR BIOLOGICAL DIVERSITY
DEFENDERS OF WILDLIFE and
NATURAL RESOURCES DEFENSE COUNCIL,

Petitioners,

v.

KEN SALAZAR, Secretary of the U.S. Department of the Interior, and
ROWAN GOULD, Acting Director of the U.S. Fish and Wildlife Service,

Respondents.

## PETITIONERS' RESPONSE TO FEDERAL RESPONDENTS' MOTION FOR VOLUNTARY REMAND AND VACATUR[1]

## INTRODUCTION

Rather than respond to Petitioners' pending brief on the merits, Federal Respondents

have moved for voluntary remand and vacatur on the grounds that, in view of adverse rulings by

other federal courts, Respondents have now withdrawn the interpretation of the Endangered

Species Act ("ESA") that formed the basis for the decision of the Fish and Wildlife Service

("FWS") to strip the Preble's meadow jumping mouse ("Preble's") of ESA protection in

Wyoming.  The government concedes that the "analysis in the 2008 Amended Listing Decision"

is legally "inadequate," and it states point-blank that it has "decided not to defend the Preble's

Amended Listing Decision and is prepared to submit a notice to the *Federal Register* vacating

the decision."  Mot. at 13.

---

[1]  Because the government's motion is a potentially dispositive one that raises important
administrative law issues, Petitioners respectfully request oral argument on the motion.

As discussed further below, Petitioners believe that, under these extraordinary circumstances – in which the federal agencies that issued a rule depriving a species of protection under the ESA have conceded that they will not (and evidently cannot) defend the legality of that rule – the Court may exercise its authority to remand and vacate the agency action under review without conducting the full inquiry into the merits that would otherwise be required. If, however, the Court concludes that, notwithstanding the government's capitulation, the Court lacks authority to vacate the Preble's delisting decision at this juncture, then the proper step would be to continue with the merits briefing that is already under way, and to render an adjudication on the merits. Indeed, Petitioners have already filed an extensive merits brief. Accordingly, especially if intervenors insist that the Court lacks authority to vacate the rule *without* a full adjudication on the merits, and the Court agrees, then intervenors should promptly file their briefs as presently provided for in the Court's scheduling order so that the Court is in a position to render a ruling on the merits and afford Petitioners the full relief to which they are entitled.

In any event, what the Court should *not* do is terminate this litigation without restoring the Preble's to the protected status it had before the decision at issue was made. In view of the government's abandonment of any legal defense of the rule under review, Petitioners are surely entitled to at least as much relief as they would have received had the government vigorously defended the rule and lost. Since the result of any such ruling would necessarily be vacatur of the rule eliminating ESA protections for the species in Wyoming, *see* 5 U.S.C. § 706(2)(A) (reviewing courts "shall" set aside rules that are arbitrary, capricious, or contrary to law), Petitioners cannot legally or logically receive less than that relief by virtue of the government's

concession that it cannot proffer an "adequate" defense of the regulation depriving the Preble's

of the protection it is legally entitled to under the ESA.  Mot. at 2.  Accordingly, whether the

Court resolves the case at this juncture (as the government proposes) or following the

completion of merits briefing (as one or more of the intervenors evidently prefer) the bottom-line

result should be the same: since the Preble's was deprived of ESA protection in Wyoming based

on an unlawful (and now abandoned) legal interpretation, the *status quo ante* should be restored

while the Service engages in any desired proceedings on remand.

## BACKGROUND

The background of this dispute is set forth in detail in Petitioners' merits brief, *see*

Docket Entry ("DE") 54, as well as in the Court's ruling granting Petitioners' motion to

supplement the record.  *See Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267 (D.

Colo. 2010).  Petitioners incorporate those discussions by reference and highlight only those

aspects of them that are particularly pertinent to the government's motion.

**1.**  In May 1998, the Preble's was listed as a threatened species throughout its range in

Colorado and Wyoming.  63 Fed. Reg. 26,517.  The Service found that the species is "likely to

become endangered within the foreseeable future throughout all or a significant portion of its

range and therefore meets the requirements to be listed as threatened" because it faces multiple

threats to its continued existence, including that "[r]iparian habitats required to support Preble's

have been severely modified or destroyed by human activities in many areas east of the Colorado

Front Range and in southeastern Wyoming."  *Id*. at 26,526.

The FWS designated "critical habitat" for the Preble's in 2003, finding that sites in both

Colorado and Wyoming are "essential to the conservation of the Preble's because they are

important to recovery," 68 Fed. Reg. 37,276, and have been subject to, or are threatened by,

"varying degrees of degradation from human use and development." *Id*. at 37,307.  In total, the

Service designated approximately 125 miles of rivers and streams and 10,500 acres of lands *in

Wyoming alone* as "critical" to the ability of the Preble's to survive and recover.  *See* DE 54 at 7.

In accordance with its listing and critical habitat designation, when the FWS conducted

consultations with "action agencies" pursuant to section 7 of the ESA, *see* 16 U.S.C. §

1536(a)(2) (requiring federal agencies to ensure, in consultation with the FWS, that their actions

are "not likely to jeopardize the continued existence of any endangered or threatened species or

result in the adverse modification of [critical] habitat of such species"), the Service continued to

recognize that the species was suffering from habitat loss and degradation throughout its range in

both Colorado and Wyoming.  *See* DE 54 at 7.  The FWS's Biological Opinions ("BiOps")

imposed mandatory measures on federal highway and other projects in Wyoming that the

Service deemed necessary to avoid jeopardy to, and further the conservation of, the Preble's.  *Id*.

at 8.  Indeed, in dozens of consultations conducted before the Preble's lost protection in

Wyoming, the Service in conjunction with other federal agencies adopted measures necessary to

safeguard the species in Wyoming and to further its overall survival and recovery.  *Id*.  In

addition, in 2003, the Service prepared a draft Recovery Plan for the Preble's that called for

long-term protection of Preble's populations in both Colorado and Wyoming as "essential" to

recovery of the species.  *Id*. at 9.

**2.**  Although several entities, including the State of Wyoming, petitioned the Service to

delist the Preble's on various grounds, the Service took no final action to eliminate or reduce

ESA protections until the Department of the Interior's Solicitor, in March 2007, adopted the

Memorandum at issue in this case, which "set forth a novel interpretation of the statutory phrase 'in danger of extinction throughout all or a significant portion of [a species'] range' which is located in the definitions of both 'endangered species' and 'threatened species' in the ESA." *Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1270. "Contrary to DOI's longstanding policy," *id.*, which required the Service to afford ESA protection to the *entire* entity found to constitute a "species" under the ESA, so long as the species was found to be endangered or threatened throughout "all *or* a significant portion of its range," 16 U.S.C. §§ 1532(6), (20) (emphasis added), the Memorandum expressly authorized a radically different approach under which a species would be protected *only* in that specific portion of its range in which it was deemed endangered or threatened at the time of listing.

Shortly after its adoption, the Memorandum was applied by FWS to strip the Preble's of all protection in the Wyoming portion of its range. While reaffirming that Preble's "is a valid subspecies" warranting listing as threatened under the Act, the Service determined that the Preble's should lose all ESA protections in Wyoming "in light of" the new interpretation of the ESA set forth in the Memorandum. 72 Fed. Reg. 62,992; *see also* 73 Fed. Reg. 39,801 (explaining that the rule was based on the "interpretation of the Act set forth in the Solicitor's Opinion"). Of crucial importance to the Court's consideration of the government's motion for voluntary remand and vacatur, it is indisputable that the legal analysis set forth in the Memorandum – and now withdrawn and abandoned by the agency that adopted it – was the ***sole*** basis on which the Preble's lost its longstanding ESA protected status in Wyoming.

In any case, the Preble's immediately lost all ESA protections in Wyoming while members of the same species across the border in Colorado continued to receive such protection.

Thus, for example, the "take" of Preble's is unlawful in Colorado, *see* 16 U.S.C. § 1539, but because of the rule that the federal government now concedes that it will not defend, it is no longer a violation of the ESA for members of the species – or even the same mouse that crosses the state border – to be killed, injured, harmed, or harassed in Wyoming.  *See* DE 54 at 20. Further, the Service announced that, because of the ESA interpretation it has now disavowed, not only would the section 7 consultation process cease to safeguard the species or any of its previously designated critical habitat in Wyoming, but that prior "commitments made through the section 7 process will no longer be binding as of the effective date of this listing determination."  73 Fed. Reg. 39,805.  Hence, the Preble's not only lost the future safeguards afforded by the ESA, but even those basic protections that had *already* been approved and adopted as a condition of federal highway and other projects – such as, *e.g.*, trapping and removing Preble's from active construction sites and protecting Preble's habitat where practicable, *see* DE 54 at 8.

**3.**   Petitioners filed this lawsuit challenging both the Solicitor's Memorandum and the Preble's decision predicated on it.  As the Court has explained, Petitioners are challenging FWS's "delisting of the Preble's in Wyoming," but this "controversy reaches beyond the grasslands of Wyoming and Eastern Colorado, as Petitioners also challenge" the Federal Respondents' "interpretation of the phrase 'significant portion of its range,'" on the grounds that this interpretation conflicts with the plain language and "statutory purpose of the ESA[,] and that in its formulation and adoption of this policy DOI failed to comply with the procedural requirements of the ESA."  *Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1271.

In its ruling granting Petitioners' motion to complete and/or supplement the

Administrative Record ("AR"), the Court held that Petitioners' "as applied" challenge to the Memorandum is the "appropriate means by which [Petitioners] may challenge [the] broad agency policy" shift embodied in the Memorandum, and the Court ordered the government to compile and produce an AR concerning the Memorandum itself.[2]   The Court also ordered the Federal Respondents to supplement the AR with BiOps and other consultation documents concerning the FWS's evaluation of the impacts of federal projects on the Preble's in Wyoming. The Court held that the excluded consultation records conflicted with the Service's determination that the Preble's was no longer subject to serious threats in Wyoming, and that the pertinent decisionmakers had admittedly failed to "consider, directly or indirectly," materials that are "relevant to the decision to de-list the Preble's in Wyoming" because they "contain detailed information and analysis relating to the Preble's."   *Ctr. For Native Ecosystems*, 711 F. Supp. 2d at 1280.

In accordance with the briefing schedule established by the Court, Petitioners filed their comprehensive merits brief in December 2010.   Relying heavily on the two district court opinions that the government now says render its Preble's decision legally "inadequate," Mot. at 2, Plaintiffs explained that the Solicitor's Memorandum and Preble's decision based on it are contrary to the plain language, legislative history, and overriding purpose of the ESA.   DE 54 at 24-42.   Petitioners also explained that the shift in policy at the heart of this litigation was

---

[2]   As discussed in Petitioners' Brief, that Court-ordered AR reflects that the Memorandum was approved at the highest levels of FWS and DOI, although it was never subjected to advance public notice and comment, as required by the ESA, and that its adoption was influenced by a political appointee whose improper involvement in ESA decisionmaking has resulted in the remand and vacatur of a number of ESA listing and critical habitat determinations.   *See* DE 54 at 10-13.

adopted in patent violation of the procedural requirements of the ESA, which require that any

such "guideline[s]" relating to the listing of endangered and threatened species must be preceded

by public notice and comment, which did not occur here.  *See* 16 U.S.C. § 1533(h).  Finally,

Plaintiffs explained that even if the legal analysis in the Memorandum were valid, the Preble's

would *still* be entitled to ESA protection in Wyoming because the AR – including the BiOps that

the Court found the FWS should have considered but failed to – demonstrate that the Preble's is

in fact facing a host of serious threats in that portion of its range, which is essential to the long-

term conservation of the species as a whole.  *See* DE 54 at 43-50.

After obtaining several extensions in the briefing schedule on the grounds that they were

reassessing their position in light of the judicial rulings rejecting the same ESA interpretation at

issue here, the Federal Respondents notified the Court that the Interior Department's Solicitor

had withdrawn the Memorandum.  *See* DE 68.  The withdrawal decision, in the form of a

Memorandum from the Solicitor to the DOI Secretary and Assistant Secretary for Fish and

Wildlife and Parks, as well as the Director of the FWS,  explains that "[i]n a 2010 decision

involving the Northern Rocky Mountain distinct population segment of the gray wolf, a district

court rejected Opinion M-37013's conclusion regarding the interpretation of the SPR phrase that

provided for applying the ESA's protections to a listed species in only a portion of its range,"

that a "subsequent decision from a court in the District of Arizona reached the same conclusion

as the Montana court," and that the now-withdrawn opinion "is also directly implicated in

several pending cases," including this one.  DE 68-1 at 1.

Consequently, the clear import of the withdrawal is that Federal Respondents have

decided to accede to the legal analysis set forth in the judicial rulings rejecting the 2007 reversal

of longstanding DOI and FWS policy.  Consistent with that understanding the government has now made plain that it will not "defend the Preble's Amended Listing Decision" because the "analysis in the 2008 final rule is inadequate" as a matter of law.   Mot. at 13.[3]

## DISCUSSION

**A.     Especially Given Federal Respondents' Withdrawal Of The 2007 Memorandum And Concession That They Will Not Defend The Preble's Loss Of ESA Protection In Wyoming, Vacatur Of The 2008 Rule And Restoration Of Preexisting ESA Protections Are Essential.**

Before Petitioners turn to the legal precedents and principles that should guide the Court's consideration of the government's motion, it is crucial to stress what should *not* be in question.  This litigation should not end without the Court being in a position to return the Preble's, as a matter of judicial decree, to the ESA protections from which the species benefitted in Wyoming for many years before the decision was made to strip it of such protection based on a novel legal interpretation that has now been squarely and emphatically rejected by two other federal courts, and that the federal government itself no longer sees fit to defend.  Under these circumstances, whatever procedural route the Court opts to take – *i.e.*, whether it grants the government's motion for voluntary remand and vacatur, or whether it resolves the case

---

[3]  As explained in the Solicitor's May 4, 2011 withdrawal memorandum, Congress passed an appropriations rider directing the Secretary of the Interior to reissue the specific rule invalidated in *Defenders of Wildlife v. Salazar*, 729 F. Supp. 2d 1207 (D. Mont. 2010), which concerned the status of the Northern Rocky Mountain distinct population segment of the gray wolf.  *See* DE 68-1 (citing Sectiion 1713, Pub. L. 112-10, 125 Stat. 38 (Apr. 15, 2011)).  As noted by the Solicitor, that provision "is applicable only to the issuance" of the wolf rule; it "makes no reference" whatsoever to the now-withdrawn 2007 Memorandum, "nor does it amend the Endangered Species Act generally."  DE 68-1 at n. 4.  Accordingly, the government has determined that this species-specific rider had no bearing on Federal Respondents' authority to withdraw the 2007 Memorandum on which the Preble's rule is predicated.  *Id.*  By the same token, it has no relevance to the government's motion conceding legal error in adoption of the Preble's rule or the relief to which Petitioners are entitled in this case.

following the completion of merits briefing – the Preble's should again, and as promptly as possible, receive the full ESA protections to which it is legally entitled, and that it *was* receiving for a decade before the unlawful and now-withdrawn policy shift was announced in 2007.  Any other result would be impossible to reconcile with the Administrative Procedure Act ("APA"), the overriding species-protection purposes of the ESA, or Petitioners' successful pursuit of their claims in this case.

As the government's motion recognizes, in light of the government's capitulation in the face of adverse judicial precedent, Petitioners certainly should receive no *less* than the "full" relief "requested in the Petition." Mot. at 10.  The Petition specifically requests that the Court not only "declare and set aside as unlawfully promulgated the March 16, 2007 Solicitor's Opinion" on which the Preble's rule is based, but also that the Court: "set aside and remand the Final Rule [eliminating Preble's protections in Wyoming]," "reinstate the prior listing of the Preble's in Colorado and Wyoming pending remand," and "reinstate the prior critical habitat designation for the Preble's in Colorado and Wyoming pending remand." DE 1 at 20.

Accordingly, Petitioners sought both to accomplish vacatur of the now-withdrawn general policy, as well as to restore the Preble's to the full legal protections it was deprived of under that policy.  Given the government's confession that it cannot defend the basis on which the Preble's lost all such legal protection, and will not even file a merits brief responding to Petitioners' detailed recitation of why the Preble's must receive such protection, this litigation should not end without Petitioners being in a position to obtain the full relief that they have sought, and to which they are legally entitled.  And while withdrawal of the 2007 Memorandum affords Petitioners relief with respect to their general challenge to that document, insofar as

Petitioners' specific interests in the Preble's are concerned that will be a largely hollow victory unless the Court also vacates the Preble's rule that flowed from the ill-fated Memorandum.

Vacating the 2008 rule and restoring the Preble's to the legal status it enjoyed prior to adoption of that rule is precisely what the APA mandates in these circumstances.[4]   It provides that the Court "*shall . . .* set aside" agency action that is arbitrary, capricious, or "otherwise not in accordance with law," 5 U.S.C. § 706(2)(A) (emphasis added).  Based on this plain language, the Supreme Court has stated that "[i]n all cases *agency action must be set aside* if the action was 'arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law,'" *FCC v. Nextwave Personal Commc'ns*, 537 U.S. 293, 300 (2003), and that should certainly apply to a rule that the government itself has determined it cannot defend in light of Petitioners' arguments, as supported by judicial rulings thoroughly undercutting the legal basis for the rule.  *See also id.* ("The [APA] requires federal courts to set aside federal agency action that is 'not in accordance with law,' which means, of course, *any* law . . . .") (internal citation omitted); *Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 331 (1976) ("if the decision of the agency 'is not sustainable on the administrative record made, then the decision must be vacated and the matter remanded'") (citation omitted).

---

[4]  As the government notes, restoring the Preble's to its status prior to the 2008 rule would also reinstate in Wyoming "special rules" exempting certain activities from the ESA's "take" prohibition.  *See* Mot. at 4 n.2.  At the same time, however, as sought in the Petition, the Service should also be directed to reinstate on remand the species' critical habitat designations in Wyoming, since those protections were eliminated *only* because of the listing decision the government is declining to defend.  *See* Mot. at 3 n.1 (acknowledging that the Service "subsequently revised" the Preble's critical habitat designation, including by designating critical habitat only in Colorado) (citing 75 Fed. Reg. 78,430 (Dec. 15, 2010)); *see also Turtle Island Restoration Network v. U.S. Dep't of Commerce*, __ F. Supp. 2d __, 2011 WL 344117, at *7 (D. Hawai'i Jan. 31, 2011) (applying the "general rule that pre-existing regulations become effective after a vacatur").

Although there are unusual circumstances in which a court may decline to vacate a rule that, *e.g.*, has been insufficiently explained, or where the Court finds that a procedural defect may be readily remedied on remand, vacatur of a legally invalid rule is unquestionably the "ordinary result," *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998), the "normal[]" approach to APA review, *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 (D.C. Cir. 2001), and the courts' usual "responsibility under the APA" when an agency action has been deemed (or, as here, admitted) to be arbitrary, capricious, or contrary to law. *Md. Pharm., Inc. v. DEA*, 133 F.3d 8, 16 (D.C. Cir. 1998); *see also Arizona Public Service Co. v. U.S. EPA*, 562 F.3d 1116, 1122 (10th Cir. 2009) (agency action should be set aside where it is "procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute").

Moreover, as the government recognizes, this fundamental principle applies with particular force when the agency action at issue has deprived a species such as Preble's of ESA protections to which it would otherwise be entitled. *See* Mot. at 13-15. Indeed, although courts on occasion keep in place, during remanded proceedings, defective rules that have *afforded protections to imperilled species* – precisely because of the "strong policy preferences" embodied in the ESA for "protecting endangered species even when such protection may result in adverse economic consequences," *Endangered Species Comm. v. Babbitt*, 852 F. Supp. 32, 42 (D.D.C. 1994) (citing *Tennessee Valley Authority v. Hill*, 437 U.S. 153 (1978)); *see also Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1406 (9th Cir. 1995) (keeping in place a rule listing a species notwithstanding a procedural violation) – the ESA's purposes overwhelmingly counsel in favor of vacatur and restoration of the *status quo ante* when a species has been

12

*deprived* of the Act's safeguards based on an invalid, or legally "inadequate," rule.  Mot. at 2;

*see, e.g., Humane Soc. of U.S. v. Kempthorne*, 579 F. Supp. 2d 7, 21 (D.D.C. 2008) ("the ESA's

preference for protecting endangered species counsels strongly in favor of vacating the Final

Rule while FWS revisits" an interpretation of the ESA depriving a species of ESA protection)

(citing *Natural Resources Defense Council v. Dep't of the Interior*, 275 F. Supp. 2d 1136, 1145

(C.D. Cal. 2002)).

There is no discernible, let alone compelling, reason for the Court to depart from these

principles in this case.  To the contrary, solely as a result of a novel legal interpretation the

government has now jettisoned the Preble's is presently receiving no ESA protections at all in

Wyoming.  Further, the record demonstrates that this is far from an abstract concern.  As the

government now acknowledges, the BiOps and other documents placed into the AR by virtue of

the Court's order reflect not only that the Preble's in Wyoming is in fact "threatened by

continuing development, habitat modification, and inadequate government protection," Mot. at

14, but also that the species benefitted directly from conservation measures – such as trapping

and removal prior to construction activities – that have been eliminated.  *See* DE 54 at 8-9.  At

present, there are absolutely no regulatory measures in place to protect or conserve Preble's or

its habitat in Wyoming – which would be a sufficient basis for its listing even *if* the 2007

Memorandum were valid, *see* DE 54 at 48-50 – although the species is at risk from a number of

threats throughout its range, including climate change.  *Id*. at 46-47.[5]

---

[5]  As noted in Petitioners' merits brief, the NatureServe biodiversity data base widely used by
government and private conservation biologists assigns the Preble's a formal state conservation
status of S1, meaning that it is considered to be "critically imperilled" in both Colorado and
Wyoming.  *See* DE 54 at 9.

On the other side of the coin, prior to the now-discarded shift in listing policy, the Preble's received these ESA protections in Wyoming for nearly ten years with no major economic or other disruptions, especially in view of the FWS's "special rules" exempting various agriculture-related and other activities from the ESA's take prohibition. *See* Mot. at 4 n.2. In essence, therefore, vacatur would merely restore a *status quote ante* in which the ESA was operating precisely as it was designed to do, *i.e.*, by allowing federal projects and other activities to proceed subject to basic measures for conserving the threatened Preble's throughout its range.

To the extent that intervenors raise any practical concerns with the immediate consequences associated with restoring ESA protections to a species that was unlawfully deprived of them, those concerns cannot, as a legal matter, justify keeping the Preble's unprotected in Wyoming. The Supreme Court has made it crystal-clear that in enacting the ESA "Congress has spoken in the plainest of words, making it abundantly clear that the balance has been struck in favor of affording endangered species the highest of priorities, thereby adopting a policy which it described as 'institutionalized caution.'" *TVA v. Hill*, 437 U.S. at 194; *see also id*. at 184 ("The plain intent of Congress in enacting this statute was to halt and reverse the trend towards species extinction, whatever the cost. This is reflected not only in the stated policies of the Act, but in literally every section of the statute . . . All persons, including federal agencies, are specifically instructed not to 'take' endangered species . . . Furthermore, it is clear that Congress foresaw that § 7 would, on occasion, require agencies to alter ongoing projects in order to fulfill the goals of the Act.").

Plainly, therefore, if, as the analysis of other federal courts confirms, and the federal

government has now essentially conceded, the Preble's is indeed entitled to ESA protection in Wyoming, there is simply no legitimate *legal* basis, consistent with the requirements of the Act and the Supreme Court's construction of it, that could be invoked to deprive the species of such protections, irrespective of any practical concerns that intervenors may articulate.  Indeed, this is exactly the kind of balancing analysis that the Supreme Court has said federal courts may *not* engage in while determining whether listed species should be afforded the safeguards mandated by the ESA.  *See TVA v. Hill*, 437 U.S. at 194-95 ("Once the meaning of an enactment is discerned and its constitutionality determined, the judicial process comes to an end.  We do not sit as a committee of review, nor are we vested with the power of veto . . . Our Constitution vests such responsibilities in the political branches.").

Moreover, as the history of the Preble's reflects, the ESA already incorporates many Congressionally-authorized mechanisms for reconciling the needs of listed species with economically productive activities.  Once again, pursuant to section 4(d) of the Act, the FWS has already adopted a number of "special rules" exempting a number of activities from the ESA's take prohibition and if intervenors (or others) believe these are inadequate for any reason there is nothing to prevent them from petitioning the agency to consider expanding them.  Further, as the BiOps regarding the Preble's in Wyoming demonstrate, the section 7 consultation process has been employed, and will presumably be employed again, in exactly the pragmatic manner Congress envisioned, *i.e.*, allowing federally funded and authorized projects to move forward so long as Preble's impacts are at least considered and sensible measures to address them are adopted.  In any event, these are the protective mechanisms that Congress has ordained for threatened species, and under our "tripartite [system], with each branch having certain defined

15

functions delegated to it by the Constitution," the Court is simply not at liberty to discard them because they may on occasion be inconvenient or time-consuming.  *TVA v. Hill*, 437 U.S. at 194.

In this connection, it is also important to stress that Preble's *in Colorado* have been receiving these ESA protections since the Preble's listing in 1998, thus further underscoring that mechanisms exist to harmonize the conservation needs of the species with other interests.  And as the federal government has now evidently recognized, there is simply no valid *legal* reason why governmental and private entities in Colorado should comply with these mechanisms for conserving the species, while no such effort is made across the state border – which has no biological significance for the species – in Wyoming.

Finally, although intervenors have surely known for many months that a return to the *status quo ante* was a distinct possibility – in view of the judicial rulings rejecting the reasoning in the 2007 Solicitor's Memorandum and the federal government's indication that it was reconsidering its position in light of those rulings – should the Court deem it appropriate so that all affected parties could plan their activities accordingly, Petitioners would not object if the Court's remedial order – either in response to the government's motion or following the completion of merits briefing – were to provide that Preble's protections must be reinstated in Wyoming within a specified, but limited, time period, *e.g.*, thirty days following the Court's order.  But what the Court should not do – and, Petitioners respectfully submit, cannot do consistent with *TVA v. Hill* and other precedents – is allow this threatened species to continue to be deprived of all ESA protections in Wyoming, *especially* in light of the federal government's concession that it will not even defend the legal rationale for eliminating those protections.

16

**B.      Under the Unusual Circumstances Here, The Court May Order Vacatur In The Absence Of A Full Adjudication On the Merits.**

Intervenors have indicated that they intend to oppose the government's motion for voluntary remand and vacatur, presumably on the grounds that the Court lacks authority to grant vacatur in the absence of a full adjudication of the merits of Petitioners' claims.  If the Court sustains that position, and hence denies the government's motion, the Court should then resume briefing on the merits so that Petitioners may continue to press for the relief to which they (and the Preble's ) are entitled, and that is plainly warranted under the law and the factual circumstances.  Especially where, as here, Petitioners have already filed a comprehensive merits brief, and intervenors attained party status in this case because the federal government might not adequately represent their position, there would be a "continuing 'case or controversy'" for judicial resolution notwithstanding the government's statement that it will not defend its own rule.  *National Parks Parks Conservation Ass'n v. Salazar*, 660 F. Supp. 2d 3, 5 (D.D.C. 2009) (denying a motion for voluntary remand and vacatur and ordering continuation of the litigation on the merits).

In any event, although the precedent on this issue does not uniformly point in one direction, it entails a highly "fact dependent inquiry," *Natural Resources Defense Council v. U.S. Dep't of the Interior*, 275 F. Supp. 2d at 1145, and generally supports the government's position that under the highly unusual circumstances of this case, the Court does have the requisite legal and equitable authority to vacate the 2008 rule and restore the Preble's to ESA protection in Wyoming at this juncture.  First, as in other situations in which courts have granted an agency's request for voluntary remand and vacatur, the adverse case law on which the government is relying bears *directly* on the issues before this Court, and even a cursory review of that case law

17

and Petitioners' arguments based on them, *see* DE 54 at 25-42, makes clear that Federal

Respondents are retreating from their defense of the Preble's rule because there are indeed

"serious substantive errors" in the underlying agency decision, and hence that vacatur pending

the remanded proceedings is fully justified on that basis.  *Building Industry Legal Defense*

*Foundation v. Norton*, 231 F. Supp. 2d 100, 105 (D.D.C. 2002) (citing cases).[6]

      Simply put, where, as here, the agency itself has not only disavowed the legal analysis

that formed the basis for the decision under review, but has requested that ESA protections for

the species at issue be restored while the agency addresses any remaining issues on remand, the

legal and equitable rationale for vacatur is especially compelling.  *See also Natural Resources*

*Defense Council*, 275 F. Supp. 2d at 1145 ("Where the existing rule is more likely to fall during

remand, the courts are more reluctant to enforce that rule in the intervening remand period.").

      Second, in this case, not only does the Court have the benefit of other judicial rulings

invalidating the very legal analysis that underlies the rule at issue, but the Court itself has already

cast doubt on the ability of the rule to withstand APA scrutiny.  In its ruling granting Petitioners'

---

[6] *See also Home Builders Associations of Northern California v. Norton*, 293 F. Supp. 2d 1, 4 (D.D.C. 2002) (granting consent decree vacating agency decision where FWS conceded that its analysis underlying a critical habitat designation was erroneous in light of a Tenth Circuit decision and other judicial precedents); *compare National Parks Conservation Ass'n*, 660 F. Supp. 2d at 5 (distinguishing *Building Industry Legal Defense Foundation* and other cases granting requests for vacatur without a full adjudication on the merits because in those cases the request for vacatur was based on judicial rulings in related cases that completely undermined the agency's legal interpretation, and those adverse rulings were deemed to be "'well-reasoned'" and founded on a "'persuasive rationale'") (quoting *National Association of Home Builders v. Evans*, 2002 WL 1205743, at *3 (D.D.C. 2002)); *Carpenters Industrial Council v. Salazar*, 734 F. Supp. 2d 126, 135 (D.D.C. 2010) (acknowledging that other federal courts have agreed that the government's confession of legal error may be sufficient to "exercise[] their equitable power to summarily vacate critical habitat designations," but concluding that it "lack[ed] the authority" to do so under the circumstances at issue).

motion to supplement the AR with the consultation documents pertaining to federal projects in Wyoming, the Court has already essentially held that the agency failed to "consider[] all relevant factors including evidence contrary to the agency's position" concerning ongoing threats to the species in Wyoming. *Ctr. For Native Ecosystems*, 711 F. Supp. 2d at 1280. Indeed, the Court specifically held that the Service failed to consider BiOps that had been omitted from the AR but which reflected substantial threats to Preble's in Wyoming from highway and road projects, gas lines, landfills, bridges, and U.S. Forest Service and Bureau of Land Management plans. *See* DE 54 at 44-45. Where the Service "should have but failed to consider these relevant documents" underscoring the need for and value of ESA safeguards specifically in the Wyoming portion of the Preble's range, *Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1281, this is tantamount to a ruling that the agency action could not be sustained without some "additional investigation or explanation," thus reinforcing that the Court has ample authority to set aside the 2008 rule at this juncture. *Sierra Club-Black Hills Grp. v. U.S. Forest Service*, 259 F.3d 1281, 1289 (10th Cir. 2001).

Third, although in some cases the government's requests for vacatur without a full adjudication on the merits have been denied because that would arguably infringe on the notice and comment rights of other parties, any such concern should have limited weight here. Not only will intervenors have a full opportunity to participate in any proceedings on remand, but the underlying legal interpretation at issue was *itself* adopted without compliance with the ESA's notice and comment requirements (which helps to explain why the overarching legal defects pinpointed by other courts were not addressed by agency officials prior to its adoption). It is undisputed, and the Court has already found, that "[n]either DOI nor the Solicitor's office . . .

provided notice of the proposed interpretation or opportunity for public comment prior to the

memorandum issuance." *Ctr. for Native Ecoystems*, 711 F. Supp. 2d at 1270.   Since the now-

withdrawn legal interpretation was itself adopted as a matter of agency policy without affording

Petitioners or others an opportunity to comment – and this has been one of Petitioners' central

claims in the case – it would be especially anomalous, and indeed inequitable, to deprive

Petitioners of the legal relief to which they would otherwise be entitled based on an argument

that the government should follow notice and comment procedures.[7]

## CONCLUSION

The Court has sufficient legal and equitable authority to grant the government's motion

for voluntary remand and vacatur, thereby restoring to the Preble's the legal and conservation

status it had prior to the 2008 rule.   If the Court concludes otherwise, however, the Court should

proceed with briefing by intervenors based on the current schedule and then make a

determination on the merits.   In any event, Petitioners respectfully urge the Court *not* to remand

*without* vacatur since that would in effect deprive Petitioners of the full relief which they have

sought in this case and to which they are entitled, and it would have the untoward effect of

leaving the Preble's without *any* ESA protection in Wyoming despite Federal Respondents'

---

[7] It is also noteworthy that several courts have held that the APA's notice and comment requirements do not even come into play with regard to requests that the court enter a consent decree vacating an agency action because that is a "judicial act" that is not subject to the APA's strictures.  *Home Builders Ass'ns of Northern California*, 293 F. Supp. 2d at 5; *see also Turtle Island Restoration Network*, 2011 WL 344117, at **7-8 ("[A] consent decree is a judicial act, rather than an agency act . . Accordingly, the APA is not applicable to the proposed consent decree.").  By the same token, the government's motion for a court order vacating the 2008 rule seeks a  "judicial act," and there is no meaningful legal basis (at least from the standpoint of notice and comment implications) for distinguishing a request for entry of a consent decree from a motion seeking to resolve a case on grounds that are unopposed by the parties who brought it.

concession that they will not and cannot support their decision to deprive the species of such

protection.[8]

<div style="margin-left: 40%;">

Respectfully submitted,

/s/Eric R. Glitzenstein
Eric R. Glitzenstein
Meyer Glitzenstein & Crystal
Suite 700
1601 Connecticut Ave., N.W.
Washington, D.C.  20009
Tel.: (202) 588-5206
Fax: (202) 588-5049

/s/Jason C. Rylander
Jason C. Rylander
Defenders of Wildlife
1130 17th Street, N.W.
Washington, D.C.  20036
Tel.: (202) 682-9400 x 145
Fax: (202) 682-1331

/s/ Michael Harris
Michael Harris
Environmental Law Clinic
University of Denver, Sturm College
of Law
2255 E. Evans Ave., Room 365H
Denver, Colorado 80208
Tel.: (303) 871-7870

</div>

---

[8] If the Court nonetheless decides to remand without vacating the 2008 rule, the Court should impose a far more abbreviated timetable for the proceedings on remand than that proposed by the FWS, and should retain jurisdiction to ensure adherence to the schedule.  Under the circumstances here, any additional time during which the Preble's is deprived of legal protections to which it is entitled under the ESA should be kept to an absolute minimum.  *See, e.g., Carpenters Industrial Council*, 734 F. Supp. 2d at 137 (since the government's proposed timetable was "premised on vacatur," the Court directed the parties to submit a proposed timetable that would better take into account the needs of the species); *Alliance for the Wild Rockies v. Allen*, 2009 WL 2015407 (D. Ore. 2009) (granting the government's motion for a voluntary remand but requiring a far more expeditious schedule for the remanded proceedings than that proposed by the government).

Fax: (303) 871-6991

Counsel for Petitioners