IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Judge John L. Kane

Civil Action No. **09-cv-01463-AP**

**CENTER FOR NATIVE ECOSYSTEMS,**
**BIODIVERSITY CONSERVATION ALLIANCE,**
**CENTER FOR BIOLOGICAL DIVERSITY,**
**DEFENDERS OF WILDLIFE, and**
**NATURAL RESOURCES DEFENSE COUNCIL,**

      Petitioners,

v.

**KEN SALAZAR, Secretary of the Interior, and**
**ROWAN GOULD, Director, U.S. Fish & Wildlife Service,**

      Respondents,

      and

**STATE OF WYOMING,**
**WYOMING FARM BUREAU FEDERATION, and**
**WYOMING STOCK GROWERS ASSOCIATION,**

      Intervenors.

---

## MEMORANDUM OPINION AND ORDER

---

**Kane, J.**

      This matter is currently before me on Respondents' Motion to Remand and for Vacatur (doc. 69). At issue is the future of the U.S. Fish and Wildlife Service's 2008 decision to delist the Preble's Meadow Jumping Mouse (*Zapus hudsonius preblei*) in the Wyoming portion of its range. For the reasons stated below, Respondents' motion is GRANTED.

## BACKGROUND[1]

The Preble's Meadow Jumping Mouse (*Zapus hudsonius prelbei*) was first listed as "threatened" by the U.S. Fish and Wildlife Service in 1998. Final Rule to List the Preble's Meadow Jumping Mouse as a Threatened Species, 63 Fed. Reg. 26,517, 26,526 (May 13, 1998) (codified at 50 C.F.R. pt. 17). After a series of petitions challenging the listing decision, the FWS found there to be substantial information that potentially warranted delisting of the Preble's and it conducted a status review pursuant to 16 U.S.C. § 1533(b)(3)(B). *See* 12-Month Finding on a Petition to Delist the Preble's Meadow Jumping Mouse (*Zapus hudsonius preblei*) and Proposed Delisting of the Preble's Meadow Jumping Mouse, 70 Fed. Reg. 5,404 (Feb. 2, 2005). After the FWS failed to timely publish a final delisting determination, the State of Wyoming filed suit to compel action in accordance with the Endangered Species Act.

Soon after the parties reached a settlement agreement in that matter, the Solicitor of the United States Department of the Interior issued a now dubious legal opinion setting forth a novel interpretation of the meaning of the statutory phrase "in danger of extinction throughout all or a significant portion of [a species'] range" which is contained in the definitions of both "endangered species" and "threatened species" in the ESA. Memorandum re: The Meaning of "In Danger of Extinction Throughout All or a Significant Portion of its Range" (Mar. 16, 2007) (doc. 34-2). The opinion defined "range" as the range in which a species currently exists, not the historic range of the species. Contrary to DOI's longstanding policy, the opinion also permitted

---

[1] I thoroughly discussed the factual and procedural background of this case in an earlier decision relating to the scope of the Administrative Record. *See Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267 (D. Colo. 2010). I repeat the portions of that discussion most relevant to Respondents' Motion for Voluntary Remand and Vacatur.

2

the Secretary to list and delist a species, sub-species, or distinct population segment in less than its presently occupied range.

Relying entirely on the statutory interpretation contained in the Solicitor's opinion, the FWS published and sought comment on a revised proposed rule to amend the listing of the Preble's in November 2007. Revised Proposed Rule to Amend the Listing for the Preble's Meadow Jumping Mouse (*Zapus hudsonius preblei*) to Specify Over What Portion of Its Range the Subspecies is Threatened, 72 Fed. Reg. 62,992 (Nov. 7, 2007) ("[W]e seek information, data, and comments concerning . . . [o]ur analysis and conclusions regarding [significant portion of its range] in light of the March 14, 2007, Department of the Interior, Solicitor Memorandum . . . ."). In the proposed rule, the FWS determined that the Preble's was "a subspecies not threatened throughout all of its range," and proposed maintaining the Preble's "threatened" status in Colorado but delisting it in Wyoming. *Id.*

On July 10, 2008, the FWS published its Final Rule amending the listing determination for the Preble's to remove legal protections for the mouse in Wyoming. Final Rule To Amend the Listing for the Preble's Meadow Jumping Mouse (*Zapus hudsonius preblei*) To Specify Over What Portion of Its Range the Subspecies Is Threatened, 73 Fed. Reg. 39,790 (July 10, 2008) ("2008 Amended Listing Decision"). After filing a 60-day notice of intent to sue for violations of the ESA on September 4, 2008, Petitioners filed the instant suit challenging the FWS's (1) delisting of the Preble's in Wyoming and (2) listing of the Preble's as threatened instead of endangered in Colorado. Petitioners also challenged (3) the DOI's interpretation of the ESA phrase "significant portion of its range," asserting that this interpretation is contrary to the statutory purpose of the ESA and that in its formulation and adoption of this policy DOI failed to

comply with the procedural requirements of the ESA.

During the pendency of this litigation, the U.S. District Court for the District of Montana issued an opinion that, in pertinent part, rejected the Solicitor's interpretation of the ESA, finding it contrary to the plain language of the statute. *See Defenders of Wildlife v. Salazar*, 729 F. Supp. 2d 1207 (D. Mont. 2010). According to Judge Molloy, the ESA only permits the FWS to list a species, a subspecies, or a distinct population segment–not some lesser portion thereof. *Id.* at 1211. In a separate opinion, the U.S. District Court for the District of Arizona rejected the statutory interpretation contained in the Solicitor's memorandum opinion on similar grounds. *See WildEarth Guardians v. Salazar*, No. 09-00574-PHX-FJM (D. Ariz. Sept. 30, 2010).

After reviewing these opinions, the Solicitor of the Department of the Interior withdrew the challenged statutory interpretation, and the FWS announced its intent to propose for notice and comment a joint policy with the National Marine Fisheries Service regarding the interpretation and implementation of the statutory phrase, "in danger of extinction throughout all or a significant portion of its range." In light of these developments and because the FWS's decision to delist the Preble's in the Wyoming portion of its range was based entirely on this now withdrawn statutory interpretation, Respondents have filed the instant motion seeking remand and vacatur of the 2008 Amended Listing Decision so that the FWS may voluntarily reconsider its decision.

## ANALYSIS

Although Petitioners acquiesce to Respondents' request for remand and vacatur, Intervenors the State of Wyoming, the Wyoming Farm Bureau Federation, and the Wyoming Stock Growers Association oppose Respondents' motion as premature and inconsistent with the

procedural mandates of the Administrative Procedures Act. I will consider their arguments relating to Respondents' Motion to Remand and for Vacatur in turn.

*Remand*

As the Tenth Circuit has noted, "Administrative agencies have an inherent authority to reconsider their own decisions, since the power to decide in the first instance carries with it the power to reconsider."[2] *Trujillo v. Gen. Elec. Co.*, 621 F.2d 1084, 1086 (10th Cir. 1980). Accordingly, upon an admission of error by an agency whose decision has been challenged, courts commonly remand the challenged decision to the agency without considering the underlying merits of the challenge. *See Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 132 (D.D.C. 2010). This is especially true when the agency's change in position results from either (1) new evidence which undermines the stated basis for the challenged action or (2) intervening events outside of the agency's control that have the potential to affect the validity of the agency's challenged action. *Id.* (citing *Ethyl Corp. v. Browner*, 989 F.2d 522, 523 (D.C. Cir. 1993) and *SKF USA Inc. v. United States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001)). Even in the

---

[2] The Wyoming Farm Bureau Federation and the Wyoming Stock Growers Association argue that these inherent powers are limited to situations in which an agency is acting in an adjudicative, as opposed to a legislative, role. Yet the cases Intervenors cite in support of this argument, while rejecting an agency's attempt to reconsider a legislative action, are not based on the distinction between an agency's exercise of adjudicative and legislative powers. Rather, the cases are most properly cited in support of the proposition that an agency may not attempt to modify a final rule without following the notice and comment procedures required by the Administrative Procedures Act. *See Nat. Res. Def. Council v. Abraham*, 355 F.3d 179 (2d Cir. 2004); *Utility Solid Waste Activities Grp. v. U.S. Envt'l Prot. Ag'y*, 236 F.3d 749 (D.C. Cir. 2001). The FWS makes no such attempt here. On the contrary, it seeks remand so it may reconsider its listing decision in accordance with the procedural requirements of the APA. Thus, even though the instant case involves the FWS's exercise of its legislative authority, remand is not inappropriate. *See Utility Solid Waste Activities Grp.*, 236 F.3d at 753 (an agency has the power to correct its mistakes "so long as it follows certain procedures . . . spelled out in APA § 553(b) for usual notice and comment rulemaking").

absence of such circumstances, courts have considerable discretion in determining whether remand is appropriate if the agency has raised a substantial and legitimate concern in support of their request for a remand. *See Carpenters Indus. Council*, 734 F. Supp. 2d at 132 (citing *Sierra Club v. Antwerp*, 560 F. Supp. 2d 21, 23 (D.D.C. 2008)).

Respondents argue that the two district court decisions rejecting the Solicitor's interpretation of "significant portion of its range" and the withdrawal of the Solicitor's memorandum opinion constitute new evidence warranting a remand. Both Intervenors argue to the contrary that this is neither new evidence nor an intervening event that would support Respondents' request for a voluntary remand. Specifically, the State of Wyoming argues that because the two district court opinions are not binding on this Court, they do not constitute new evidence. Response to Federal Respondents' Motion for Voluntary Remand and Vacatur (doc. 74), at 8 (citing *Hart v. Massanari*, 266 F.3d 1155, 1172-73 (9th Cir. 2001)).[3]

The irony of the State of Wyoming's citation to a case from the Ninth Circuit in support of the argument that the case law of other circuits does not bind this Court is not lost upon me. That being said, the State of Wyoming is correct in its assertion. *See United States v. Carson*, 793 F.2d 1141, 1147 (10th Cir. 1986). This does not, however, mean that these decisions are without

---

[3] The Wyoming Farm Bureau Federation and the Wyoming Stock Growers Association take this argument one step further and assert that Respondents *may not* base their motion for voluntary remand on a change of law based on district court opinions. Response to Respondents' Motion for Voluntary Remand and Vacatur (doc. 75) at 7 (citing *Tribune Co. v. F.C.C.*, 133 F.3d 61, 68 (D.C. Cir. 1998) ("We have suggested (in dicta) that where an agency is confronted with an undisputable indication that its rule is illegal, either because of the reasoning of a Supreme Court decision or intervening legislation, it may be entitled, indeed obliged, to decline to apply it")). I find no basis in the cited case, or elsewhere, for this argument. As an initial matter, the quoted statement is dicta relying upon dicta – a dubious provenance for any legal proposition. Furthermore, the quoted statement is merely permissive and in no way restricts the universe of law upon which an agency may rely in determining that a statutory interpretation is illegal.

persuasive value.  As Respondents properly note, "courts routinely consider decisions from other circuits when analyzing motions for remand."  Reply in Support of Motion for Remand (doc. 78), at 6.  *See, e.g., Natural Res. Def. Council v. U.S. Dept. of the Interior*, 275 F. Supp. 2d 1136, 1142 (C.D. Cal. 2002) (relying on the persuasive value of the Tenth Circuit's decision in *N.M. Cattle Growers Ass'n v. U.S. Fish & Wildlife Serv.* as grounds for granting the FWS's motion for voluntary remand).  I have reviewed the decisions rejecting the Solicitor's interpretation of "significant portion of its range," and I find them very persuasive.  Thus, they constitute sufficient "new evidence" to justify Respondents' Motion for Remand.[4]

Nevertheless, argues the State of Wyoming, remand in this instance is premature because the FWS has not yet completed their policy defining "significant portion of its range." Accordingly, the State of Wyoming seeks a stay until the FWS has completed its new policy and has explained why that new policy necessitates reconsideration of the 2008 Amended Listing Decision.

As Respondents note, the State of Wyoming has not filed a motion for a stay and I may not construe their request for a stay as a motion.  *See* D.C.COLO.LCivR 7.1(C).  Even were I to consider this request as a motion for a stay, the State of Wyoming has failed to adduce sufficient evidence that a stay is warranted.[5]  Accordingly, Respondents' Motion for Remand is

---

[4] Because I find these district court decisions justify Respondents' Motion for Remand, I do not address Intervenors' arguments relating to whether the decision to withdraw the Solicitor's Memorandum Opinion constitutes "new evidence" or an "intervening circumstance" for purposes of justifying the Respondents Motion for Voluntary Remand.

[5] In order to obtain a stay, the State of Wyoming bears the burden of showing that (1) a stay would not prejudice the Petitioners, Respondents, or other parties; (2) it would suffer hardship and inequity if the action is not stayed; and (3) judicial resources would be saved. *See Landis v. N. Am. Co.*, 299 U.S. 248 (1936).  It has failed to address either the first or third factors and has failed to demonstrate that remand will result in any significant hardship.

GRANTED.  I now turn to Respondents request for vacatur of the 2008 Amended Listing Decision.

*Vacatur*

Although an agency is ordinarily required to provide adequate public notice and comment in order to repeal a rule, 5 U.S.C. § 553, a reviewing court is not similarly bound.  In fact, under the APA, reviewing courts are directed to summarily set-aside agency action found to be "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."  *Fed. Commc'ns Comm'n v. Nextwave Pers. Commc'ns*, 537 U.S. 293, 300 (2003).  Most relevant to the instant motion, when a rule has been found to be legally invalid, the ordinary result is vacatur.  *See Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998).

Intervenors do not question the appropriateness of vacatur when a rule has been found legally invalid; instead, they challenge whether vacatur is appropriate when a reviewing court has not made a decision on the merits of the challenged action.  Seizing upon the APA's requirement that an agency action be set-aside when it is found unlawful, Intervenors argue that a reviewing court may set-aside agency action *only* when it finds the agency's action unlawful.[6]  *See* 5 U.S.C. § 706(2); *see also Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 136 (D.D.C. 2010); *Nat'l Parks Conserv. Ass'n v. Salazar*, 660 F. Supp. 2d 3, 5 (D.D.C. 2009).  This argument is

---

[6] Intervenors and the cited cases also adopt the argument that allowing vacation of a rule without a decision on the merits allows an agency to repeal a rule without providing the opportunity for notice and comment required by the APA.  This argument ignores the distinction between judicial and agency action.  As noted above, a court's decision to vacate an agency's action is not subject to the APA, and an agency's motion for vacatur is not a *fait accompli*.  As I detail below, the decision to vacate an agency's decision without an express determination on the merits is achieved through a careful balancing of a variety of equitable considerations.  I am, quite frankly, puzzled by the seemingly unquestioning acceptance that judicial vacatur is in any way bound by the APA.

unconvincing.

As an initial matter, Intervenors misapprehend the import of the APA's judicial review provision. The language of § 706(2) is mandatory, but not exclusive.[7] It does not expressly limit a reviewing court's authority to set-aside an agency's action;[8] it merely requires a reviewing court to do so in certain circumstances.[9] The lack of an express jurisdictional limitation is significant, because, as the Supreme Court has stated, absent an express congressional mandate to the contrary, courts "retain traditional equitable discretion." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982) ("[A] major departure from the long tradition of equity practice should not be lightly implied." Statutes should be construed "in favor of that interpretation which affords a full opportunity for equity courts to treat enforcement proceedings . . . in accordance with their traditional practices, as conditioned by the necessities of the public interest which Congress has sought to protect."). Because there is no express jurisdictional limitation in the APA, I retain my traditional equitable discretion.[10] *See Bob Marshall Alliance v. Lujan*, 804 F. Supp. 1292, 1296

---

[7] Although not relevant to the instant discussion, it is worth noting that there is some debate whether the language of § 706(2) is even mandatory. *See* Ronald M. Levin, *"Vacation" at Sea: Judicial Remedies and Equitable Discretion in Administrative Law*, 53 Duke L.J. 291 (2003). I need not address this issue to resolve the instant dispute, and I decline to do so.

[8] For a thorough examination of the text, history, and construction of § 706, see Levin, *supra* note 7 at 309-15. Although the primary thrust of Professor Levin's argument is aimed at justifying the practice of remanding agency decision without vacatur, his reasoning and rationale apply equally well to vacating an agency's decision even without a decision on the merits.

[9] Again, the mandatory nature of § 706(2) has been questioned by at least one commentator. *See* Levin, *supra* note 7.

[10] I do not suggest that a reviewing court may circumvent the clear limitations on judicial review of an agency's action via an exercise of its equitable jurisdiction. Where, as here, however, an agency seeks to invoke a court's equitable jurisdiction, equitable relief is consistent with the deference owed an agency's decision under the APA.

n.5 (D. Mont. 1992).

This point is not merely academic.  As the Tenth Circuit has noted, "Vacatur is an equitable remedy . . . and the decision whether to grant vacatur is entrusted to the district court's discretion." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1139 (10th Cir. 2010).  Thus, vacation of an agency action without an express determination on the merits is well within the bounds of traditional equity jurisdiction.  *See Natural Res. Def. Council v. U.S. Dep't of Interior*, 275 F. Supp. 2d 1136, 1143 (C.D. Cal. 2002); *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Salazar*, No. 07-cv-00876 (D.N.M. May 4, 2009) (Dkt. No. 51 at 5).  Completing the syllogism, because vacatur is an equitable remedy, and because the APA does not expressly preclude the exercise of equitable jurisdiction, the APA does not preclude the granting of vacatur without a decision on the merits.

In exercising my equitable discretion and determining whether it is appropriate to vacate the FWS's 2008 Amended Listing Decision, I consider "the seriousness of the deficiencies in the completed rulemaking and the doubts the deficiencies raise about whether the agency chose properly from the various alternatives open to it in light of statutory objectives," weighed against any harm that might arise from vacating the existing rule, including the potential disruptive consequences of an interim change.  *United Mine Workers v. Dole*, 870 F.2d 662, 673 (D.C. Cir. 1993); *see also Allied Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993).  I begin by considering the deficiencies in the FWS's 2008 Amended Listing Decision.

In light of the above-cited opinions, the FWS's decision to withdraw the rule, and the complete disavowment of the Solicitor's legal opinion that formed the basis for the 2008

Amended Listing Decision, it is clear that the 2008 Amended Listing Decision suffered from significant deficiencies. Despite Intervenors' argument to the contrary, the best available science that justified the FWS's conclusion that the Preble's was not threatened in the Wyoming portion of its range does not alleviate this deficiency. The science underlying the 2008 Amended Listing Decision focused solely on the Wyoming portion of the Preble's range. Absent designation of any distinct population segments,[11] the FWS will be required to consider the best available science concerning the Preble's viability throughout its range in both Wyoming *and Colorado.* *See* Final Rule to Amend the Listing for the Preble's Meadow Jumping Mouse (*Zapus hudsonius preblei*) To Specify Over What Portion of Its Range the Subspecies is Threatened, 73 Fed. Reg. 39790, 39802 (July 10, 2008) (noting that "the Wyoming portion of [the subspecies'] range is necessary for resiliency, redundancy, and representation of the Prebles"). Thus, the best available science contained in the 2008 Amended Listing Decision is of limited utility.

Intervenors also argue that any error in the promulgation of the 2008 Amended Listing Decision was merely "legal." Although the intent of this assertion is unclear, they appear to suggest that this would weigh against the significance of the deficiency. Once again, however, their argument misses the point. It matters not whether the deficiency was "legal" or "factual;" in this context the key distinction is between "substantive" and "procedural" errors. *See Bldg. Indus. Legal Def. Found. v. Norton*, 231 F. Supp. 2d 100, 105 (D.D.C. 2009). The now

---

[11] The State of Wyoming argues that, even if the Solicitor's interpretation was deficient, vacatur is not necessary to cure any defects because it is likely to submit information to the FWS justifying the designation of distinct population segments based on hydrologic unit boundaries. This argument ignores that fact that this information has not been subject to the procedural strictures of the ESA and the APA. Wyoming is free to participate in and, as necessary, challenge the forthcoming rulemaking process. This does not, however, mean that vacatur is not necessary.

withdrawn Solicitor's opinion resulted in a significant substantive error, because it impermissibly limited the FWS's consideration of the threats to the Preble's along political boundaries completely lacking in biological significance.  Based on the substantive nature of this error, there is a greater likelihood that the FWS will revise the rule upon remand.  *See Natural Res. Def. Council*, 275 F. Supp. 2d at 1143.  This side of the scale favors vacatur.  I now turn my attention to the potential disruptive consequences of reinstating the 1998 listing decision.

Intervenors cite numerous disruptions that will result from reversion to the 1998 listing decision and the reinstatement of ESA protections for the Preble's in the Wyoming portion of its range.  Specifically, they cite the delay and resultant cost ESA consultation will have on numerous projects contained in the State's transportation plan, energy development projects on the State's trust lands, and the State's agricultural industry.  These harms are, however, irrelevant.

As the Supreme Court has noted, "The plain intent of Congress in enacting [the ESA] was to halt and reverse the trend toward species extinction, *whatever the cost*."  *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 184 (1978) (emphasis added).  In enacting the ESA, Congress definitively skewed the balancing process in favor of species protection, and I cannot ignore this clear command.  *See, e.g., Humane Soc'y of U.S. v. Kempthorne*, 579 F. Supp. 2d 7, 21 (D.D.C. 2008) (citing "the ESA's preference for protecting endangered species" as justification for retaining protections for a species pending remand proceedings).  Consistent with the ESA, vacatur of the 2008 Amended Listing Decision and reinstatement of the 1998 listing rule will provide the Preble's the most protection pending the FWS's reconsideration of its 2008 Amended Listing Decision and resolution of the petitions to delist the Preble's filed by the State of Wyoming and Coloradans for Water Conservation and Development.

Despite this seemingly draconian result, most of the disruptions cited by Intervenors can be mitigated fairly quickly. For nearly ten years the Preble's was afforded protection under the ESA, and the State of Wyoming and the FWS developed streamlined procedures allowing for meaningful consultation to be completed in a timely, efficient manner. Upon remand and vactur, Respondents shall make every effort to consult with the State of Wyoming to amend the Programmatic Consultation agreement relating to transportation projects to include conservation measures for inclusion in various project types in order to avoid and minimize impacts to the Preble's and its habitat. Furthermore, the § 4(d) special rule exempting numerous activities from the ESA's general take prohibitions shall be reinstated. These special rules will alleviate many of the State's concerns relating to agricultural improvements.[12]

## CONCLUSION

Based on the foregoing discussion, Respondents' Motion for Remand and Vacatur is GRANTED. IT IS ALSO ORDERED that:

 1. The FWS's 2008 Amended Listing Decision under the ESA concerning the Preble's meadow jumping mouse, 73 Fed. Reg. 39,790 (July 10, 2008), is remanded to the Service for reconsideration. The 2008 Amended Listing Decision is also vacated, effective August 6, 2011.

2. The Service shall publish notice in the Federal Register of the Service's action vacating the 2008 Amended Listing Decision concerning the Preble's.

3. The Service shall make clear in the same Federal Register notice that vacating the 2008 Amended Listing Decision has the effect of reinstating: (a) the 1998 listing rule for the

---

[12] Although there were no procedures in place to streamline consultation for energy development on the State's trust lands, there is no reason to speculate that none can be developed.

Preble's, 63 Fed. Reg. 26,517 (May 13, 1998); and (b) the Endangered Species Act section 4(d) special rule regarding the Preble's published in the Federal Register in 2001, amended in 2002, and extended indefinitely in 2004, 66 Fed. Reg. 28125 (May 22, 2001); 67 Fed. Reg. 61,531 (Oct. 1, 2002); 69 Fed. Reg. 29,101 (May 20, 2004).

4. The Service shall complete its review of the status of the Preble's and publish a 12-month finding in the Federal Register on the two December 17, 2003 petitions submitted by the State of Wyoming and Coloradans for Water Conservation and Development to delist the Preble's by the sooner of either twelve months after its formulation of a new interpretation of the "significant portion of its range" language or June 1, 2013.

5. By July 1, 2013, the Federal Respondents shall file a status report setting forth their compliance with this Order.

6. Upon completion of the remand ordered herein by this Court, final judgment shall be entered in accordance with Fed. R. Civ. P. 58.

Dated:  July 7, 2011				BY THE COURT:

						**s/John L. Kane**
						Senior U.S. District Judge